UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA        :

                                     :

    -against-               :                NOTICE OF MOTION TO
                                   :                DISMISS

HALIMA SALMAN,         :

                                   :                24-CR-206 (NCM)

           Defendant.       :
-------------------------------------------------------X

PLEASE TAKE NOTICE, upon the annexed memorandum of law, that the defendant

HALIMA SALMAN, by her attorneys MIA EISNER-GRYNBERG and SAMUEL JACOBSON

of the Federal Defenders of New York, Inc., will move the Court, before the Honorable Natasha

C. Merle, United States District Judge for the Eastern District of New York, for an Order:

    1.        Dismissing the indictment due to pre-indictment delay.

    2.        In the alternative, granting a pretrial evidentiary hearing.

    3.        Granting such other and further relief as the Court may deem just and proper.

DATED:       BROOKLYN, N.Y.
               April 16, 2025

                                                 /s/
                                 MIA EISNER-GRYNBERG
                                 SAMUEL JACOBSON
                                 Attorneys for Halima Salman
                                 Federal Defenders of New York, Inc.
                                 1 Pierrepont Plaza, 16th Floor
                                 Brooklyn, N.Y. 11201
                                 (718) 330-1257

TO:    JOHN J. DURHAM
        United States Attorney
        Eastern District of New York
        271 Cadman Plaza East
        Brooklyn, N.Y. 11201
        By:   Assistant U.S. Attorney Amanda Shami
               Assistant U.S. Attorney Andrew Reich

CC:   Clerk of the Court (NCM) (by ECF)
      Halima Salman

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
UNITED STATES OF AMERICA       :
       :
   -against-       :
       :    24-CR-206 (NCM)
HALIMA SALMAN,       :
       :
      Defendant.    :
------------------------------------------------------X

### MEMORANDUM IN SUPPORT OF
### MOTION TO DISMISS DUE TO PRE-INDICTMENT DELAY

MIA EISNER-GRYNBERG
SAMUEL JACOBSON
Attorneys for Halima Salman
Federal Defenders of New York, Inc.
1 Pierrepont Plaza, 16th Floor
Brooklyn, New York 11201
(718) 330-1257

TO:  JOHN J. DURHAM
    United States Attorney
    Eastern District of New York
    271 Cadman Plaza East
    Brooklyn, New York 11201
    By:  Assistant U.S. Attorney Amanda Shami
        Assistant U.S. Attorney Andrew Reich

A.  <u>The Indictment Must Be Dismissed Due to the Government's Long and Prejudicial Delay In Charging Ms. Salman</u>

The charges against Ms. Salman must be dismissed due to the inordinate delay between the government's investigation and the filing of the indictment in her case. This delay caused the loss of key witnesses and evidence, impacting Ms. Salman's ability to defend against the allegations, in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution.

Ms. Salman was charged with receiving military-type training from ISIS, in violation of 18 U.S.C. § 2339D, nearly five years after law enforcement began investigating her, and five-to-seven years after the alleged unlawful conduct. Throughout this time, the context in which ISIS was operating was rapidly shifting, resulting in its loss of vast amounts of territory and military control in Syria. This led to widespread disarray and the deterioration of ISIS institutions, as well as military violence that resulted in many deaths and disappearances. In addition, Ms. Salman spent five years in the custody of the Syrian Democratic Forces ("SDF"), a Kurdish-led militia known for its haphazard recordkeeping and mismanagement of detention camps like the ones Ms. Salman was held in. The prolonged delay and shifting regional situation has resulted in the loss of key witnesses and evidence that would have been crucial to Ms. Salman's defense.

B.  <u>Factual Background</u>

Ms. Salman is a U.S.-born citizen. In late 2016 or early 2017, while still a minor, she was taken by her father, along with her mother and siblings, to ISIS-controlled territory in Syria. Ms. Salman and her family spent the next nearly eight years fighting to survive, first, under constant siege and bombardment fleeing from town to town, and then, for years languishing in Syrian detention camps. Through it all, Ms. Salman spent her time trying to live a normal life, sewing, cleaning, baking, and dreaming of returning home and being reunited with her family.

In March 2019, Ms. Salman surrendered to the SDF in the town of Bahguz in northeastern Syria. She then spent the next five years in a series of detention camps and prisons where the SDF held family members of alleged ISIS supporters. The conditions in the camps were brutal and traumatizing. Amnesty International reports large-scale violations of the human rights of women and children detainees including physical abuse, sexual violence, lack of proper health facilities and sanitation, and lack of food and clean water. *See* Amnesty Int'l, *Aftermath: Injustice, Torture and Death in Detention in Northeast Syria* (2024), available at https://www.amnesty.org/en/documents/mde24/7752/2024/en/.

The United States has militarily backed the SDF since 2017. *See* Blanchard, Christopher. Cong. Rsch. Serv., RL33487, *Syria: Transition and U.S. Policy* (2025). The U.S.-led coalition forces in Syria was and remain involved in the operation of the detention camps in northeast Syria. *See* Amnesty Int'l, *supra* at 2. The U.S. government works with the SDF to repatriate U.S. citizens held in the detention camps, and U.S. law enforcement has access to the camps for its investigations. *Id.* As evidenced by the record, the U.S. government was aware of Ms. Salman's presence in the camps early on. According to the discovery produced to date, in or around 2019 the FBI opened an investigation into her family. Ms. Salman's aunt, residing in the United States, was questioned by the FBI in her home and asked about her sister, Ms. Salman's mother. *See* Savage, Charlie, *U.S. seeks to repatriate family of 10 Americans from camps in Syria*, N. Y. Times, Sep. 12, 2023, available at https://www.nytimes.com/2023/09/12/us/politics/syria-family-repatriate.html. Ms. Salman's sister was interviewed by the FBI in the detention camps in Syria in 2019, at which time she disclosed the names of Ms. Salman and other members of her family to law enforcement agents. As early as June 15, 2019, U.S. law enforcement conducted a physical extraction of Ms. Salman's husband's phone in Syria. Data from this phone was

transmitted to the National Media Exploitation Center's ("NMEC") database in Maryland, where it was queried with Ms. Salman's identifying information by the FBI. By August 18, 2022 at the latest, the phone's contents had been examined and a report filed. In September 2023, however, the New York Times reported that the U.S. government was working to repatriate the Salman family. One year earlier, human rights advocates had been in touch with the Salman family and alerted the State Department to their detention in the camps. *See* Savage, *supra* at 2.

On May 7, 2024, Ms. Salman and her family were finally repatriated and arrived at John F. Kennedy airport in New York. Upon her arrival, Ms. Salman was arrested and taken into custody, where she was charged with receiving military-type training in violation of 18 U.S.C. § 2339D, "[i]n or about and between July 2017 and February 2019." *See* ECF No. 13. The charges were brought at least five years after the beginning of the investigation and five-to-seven years after the alleged conduct. For the reasons that follow, the government's delay in bringing a timely prosecution of these charges has prejudiced Ms. Salman's ability to defend herself and only a dismissal of the charges will offer satisfactory and fair redress. Alternatively, a hearing to determine the reasons for the government's delay is necessary to assess whether Ms. Salman's rights to constitutional due process have been violated.

C.  The Pre-Indictment Delay in This Case Warrants Dismissal

The Supreme Court and Second Circuit Court of Appeals have long recognized the defendant's Due Process right to be charged in a timely manner so as not to prejudice her ability to raise an effective defense. Pre-indictment delay runs from the time the offense occurs to when the defendant is formally charged. See *United States v. Marion*, 404 U.S. 307, 313 (1971). While the primary safeguard against bringing stale charges is generally the statute of limitations, *see United States v. Ewell*, 383 U.S. 116, 122 (1966), the statute of limitations does not represent the

exclusive form of protection. Pre-indictment delay also implicates the Due Process Clause of the Fifth Amendment in which prejudicial pre-indictment delay would likewise require dismissal. *See Marion*, 404 U.S. at 324.

"While the Supreme Court has declined to define the precise circumstances that will constitute a violation of a defendant's rights under the Due Process Clause for undue delay," *United States v. Black,* 918 F.3d 243, 281 (2d Cir. 2019), citing *United States v. Lovasco*, 431 U.S. 783, 797 (1977), "proof of actual prejudice" to a defendant makes a due process claim "concrete and ripe for adjudication." *Black*, 918 F.3d at 281, quoting *Lovasco*, 431 U.S. at 789. The Second Circuit has repeatedly held that "where pre-indictment delay has been shown to cause 'substantial prejudice' to the defendant's ability to present his defense and 'the delay was an intentional device to gain a tactical advantage over the accused,'" then a violation of the defendant's Due Process rights may be found. *United States v. Cornielle*, 171 F.3d 748, 752 (2d Cir. 1999), quoting *Marion*, 404 U.S. at 324; see also *Black*, 918 F.3d at 281 (same); *United States v. Ray*, 578 F.3d 184, 199-200 (2d Cir. 2009); *United States v. Sorrentino,* 72 F.3d 294, 297 (2d Cir. 1995). "Actual prejudice to the defense of a criminal case may result from the shortest and most necessary delay; and no one suggests that every delay-caused detriment to a defendant's case should abort a criminal prosecution." See *Marion* 404 U.S. at 325. Notably, when, as here, a Fifth Amendment constitutional violation exists, dismissal with prejudice is required. See *Marion*, 404 U.S. at 324.

To that end, "Prejudice from an impairment of the right to a fair trial 'is commonly demonstrated by the loss of documentary evidence or the unavailability of a key witness." *Black*, 918 F.3d at 281, quoting *Cornielle*, 171 F.3d at 752. Here, key witnesses and documentary

4

evidence can no longer be found, substantially prejudicing Ms. Salman's ability to mount a defense.

Much like the right to a speedy trial under the Sixth Amendment, which attaches the moment the Government indicts and/or arrests the accused, whichever comes first, see *Marion*, 404 U.S. at 313, 320, the due process right against pre-indictment delay is similarly enforceable because a lapse of time between an offense and charges related to that offense often result in the loss of witnesses or investigative opportunities that the defense could only have effectively pursued if the charges were brought promptly after the underlying conduct occurred, see *Black*, 918 F.3d at 281; *Cornielle*, 171 F.3d at 752.

Based on the available discovery in this case, the government began investigating Ms. Salman around 2019, five years before they repatriated her and charged her with a crime. During this five-year period, Ms. Salman was in detained in inhumane conditions at the SDF detention camps in Syria. ISIS, which had previously controlled the area in northeastern Syria, had lost its last stronghold in Bahguz.

Prior to its decline, ISIS operated as a highly centralized and bureaucratic regime. The Islamic State kept a comprehensive array of documents, notices, receipts, and internal memos. They were institutionalized into departments for myriad services and hired people to oversee resources and carry out the State's operations. They issued IDs and kept track of fighters as well as civil service employees. They also collected taxes and opened a complaints office to solicit feedback. One reported anecdote illustrates how seriously ISIS took its bureaucratic management: a nurse at a hospital in Raqqa said that when ISIS arrived, bureaucratizing the hospital was their first order of business. They were "quick to change the rubber stamps and the headed note paper so people knew this was an Islamic State hospital…" Malik, Shiv, *The Isis*

5

*papers: behind death cult image lies a methodical bureaucracy*, The Guardian, Dec. 7, 2015, available at https://www.theguardian.com/world/2015/dec/07/isis-papers-guardian-syria-iraq-bureaucracy.

ISIS's emphasis on bureaucratic documentation is important to this case. Since its defeat in 2019, ISIS has become much more decentralized and no longer operates as it did before, meaning the repository of documentation with potential exculpatory evidence for the defense in this case no longer exists. The central piece of evidence against Ms. Salman is a document that purports to say she had received training from Nusaybah Katiba, ISIS's women's battalions, on how to use a rifle. However, the document is unstamped and its origin is unknown. A document such as this, if real, would have been kept by ISIS at the height of its bureaucracy. Access to these and other such documents is critical to Ms. Salman's case, in order for the defense to verify the authenticity of the document and compare it to similar documents. Without them, there is no viable path for the defense to investigate whether this document is consistent with how ISIS would have recorded a permit for weapons or other conducted documentation for military training for someone in Ms. Salman's position. In the period between 2019 and 2024 when Ms. Salman was indicted, ISIS was no longer functioning at an institutional level that could keep and track documents. As a result, in the years since ISIS's loss of territory in Syria and rapid decline, such documents are no longer available to the defense.

In addition to the loss of evidence, the pre-indictment delay in Ms. Salman's case has led to the loss of essential witnesses. During the time Ms. Salman was in Syria she interacted with numerous people who could have testified to her actions, her character, and her whereabouts during the period when the government alleges she received military training. Those witnesses are now unavailable, because they are dead or missing.

The government's delay in this case is especially stark when compared to the timeline in other ISIS repatriation cases. In *United States. v. Musaibli*, the defendant spent just six weeks in SDF custody before he was repatriated by the U.S government and charged with providing material support to ISIS upon arrival. *See* Gov't Resp. to Def. Mot. to Suppress, No. 18-CR-20495 (E.D. Mi. Feb. 9, 2021), ECF No. 115 at 3.

The FBI began investigating Ms. Salman as early as 2019, and by August 2022 at the latest they had examined the contents of her husband's phone. At any point during this period the government could have repatriated Ms. Salman for prosecution. Instead, they waited years. It is impossible to view this lengthy delay as unintentional. And the prejudice to Ms. Salman is clear. Following her surrender to the SDF in March 2019, every year that passed made it significantly less possible for her to dispel the government's claims. Phones were confiscated or destroyed, evidence went unpreserved, bureaucratic documents were lost, and witnesses died or were disappeared, all in a country where the defense is unable to mount anything resembling a meaningful pretrial investigation.

D. Conclusion

Accordingly, for the reasons discussed above, the indictment should be dismissed with prejudice. At a minimum, the Court should hold a hearing to determine the reasons for the years-long delay and the prejudice to Ms. Salman's defense.

DATED:      BROOKLYN, N.Y.
            April 16, 2025

_____/s/_____

MIA EISNER-GRYNBERG
SAMUEL JACOBSON
Attorneys for Halima Salman
Federal Defenders of New York, Inc.
1 Pierrepont Plaza, 16th Floor
Brooklyn, N.Y. 11201
(718) 330-1257
