UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA       :

                                 :

    -against-               :              NOTICE OF MOTION TO

                                 :              SUPPRESS NMEC EVIDENCE

HALIMA SALMAN,           :

                                 :              24-CR-206 (NCM)

          Defendant.        :
-------------------------------------------------------X

PLEASE TAKE NOTICE, upon the annexed memorandum of law, that the defendant

HALIMA SALMAN, by her attorneys MIA EISNER-GRYNBERG and SAMUEL JACOBSON

of the Federal Defenders of New York, Inc., and MICHAEL PRICE of the Fourth Amendment

Center, will move the Court, before the Honorable Natasha C. Merle, United States District

Judge for the Eastern District of New York, for an Order:

1.     Suppressing all evidence obtained or derived from warrantless queries of the National Media Exploitation Center ("NMEC") about her, in violation of the Fourth Amendment of the United States Constitution, pursuant to Fed. R. Crim. P. 12(b)(3)(C); or

2.     In the alternative, directing that a hearing be held outside of the presence of the jury before trial as to the admissibility of such evidence; and

3.     Granting such other and further relief as the Court may deem just and proper.

DATED:     BROOKLYN, N.Y.
            April 16, 2025

                                           /s/
                             MIA EISNER-GRYNBERG
                             SAMUEL JACOBSON
                             Federal Defenders of New York, Inc.
                             1 Pierrepont Plaza, 16th Floor
                             Brooklyn, New York 11201
                             (718) 330-1257

                             MICHAEL PRICE
                             Fourth Amendment Center
                             National Association of Criminal Defense Lawyers

1660 L Street, NW, 12th Floor
Washington, DC 20036
(202) 465-7615

*Attorneys for Halima Salman*

TO:    JOHN J. DURHAM
       United States Attorney
       Eastern District of New York
       271 Cadman Plaza East
       Brooklyn, N.Y. 11201
       By:    Assistant U.S. Attorney Amanda Shami
              Assistant U.S. Attorney Andrew Reich

CC:    Clerk of the Court (NCM) (by ECF)
       Halima Salman

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA     :
     :
  -against-     :
     :     24-CR-206 (NCM)
HALIMA SALMAN,     :
     :
     Defendant.     :
-------------------------------------------------------X

## MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE OBTAINED THROUGH WARRANTLESS QUERIES OF THE NATIONAL MEDIA EXPLOITATION CENTER

MIA EISNER-GRYNBERG
SAMUEL JACOBSON
Federal Defenders of New York, Inc.
1 Pierrepont Plaza, 16th Floor
Brooklyn, New York 11201
(718) 330-1257

MICHAEL PRICE
Fourth Amendment Center
National Association of Criminal Defense Lawyers
1660 L Street, NW, 12th Floor
Washington, DC 20036
(202) 465-7615

*Attorneys for Halima Salman*

TO:   JOHN J. DURHAM
     United States Attorney
     Eastern District of New York
     271 Cadman Plaza East
     Brooklyn, New York 11201
     By:   Assistant U.S. Attorney Amanda Shami
          Assistant U.S. Attorney Andrew Reich

**TABLE OF CONTENTS**

A.  Introduction……………………………………………………………………….......1

B.  Background…………………………………………………………………....…...2

C.  Argument…………………………………………………………………………….4

    i.  Querying the NMEC Database for Salman Was a Fourth Amendment Search……...4

        a.  Salman Had a Reasonable Expectation of Privacy in Her Communications and Cell Phone Data…………………………………………………...………4

        b.  Querying the NMEC Database Was a Search Under *Hasbajrami*.........................6

    ii.  A Warrant Is Required to Query the NMEC Database for Information About a U.S. Person……………………………………………………………………...10

D.  Conclusion………………………………………………………………….........11

i

This Memorandum of Law is submitted in support of Halima Salman's motion to suppress evidence obtained through warrantless queries of the National Media Exploitation Center ("NMEC"), in violation of the Fourth Amendment to the United States Constitution.

A.    Introduction

Halima Salman, a United States citizen, has been charged under Title 18, United States Code, Section 2339D, based on evidence obtained through warrantless queries of the National Media Exploitation Center ("NMEC"). NMEC is a massive database of digital media and personal information that the government has "acquired, seized, or captured outside of the United States." ECF No. 1 at 6. It also contains data from and about U.S. persons, including Salman. *See, e.g., id.* at 9-10.

Salman had a reasonable expectation of privacy in her electronic communications and cell phone data. This privacy interest was "sufficient to trigger a Fourth Amendment reasonableness inquiry when the government undertakes to monitor even foreign communications in a way that can be expected to, and in fact does, lead to the interception of communications with United States persons." *United States v. Hasbajrami*, 945 F.3d 641, 666 (2d Cir. 2019). And as a result, even if the government's initial data collection was lawful, the FBI's subsequent querying of the NMEC database for information about Salman was "a separate Fourth Amendment event that, in itself, must be reasonable." 945 F.3d at 670.

Here, reasonableness means "get a warrant"—as Judge DeArcy Hall recently found in strikingly similar circumstances. *See United Sates v. Hasbajrami*, 11-CR-623 (LDH), 2025 WL 447498, at *7-8 (E.D.N.Y. Feb. 10, 2025) ("To hold otherwise would effectively allow law enforcement to amass a repository of communications …—including those of U.S. persons—that can later be searched on demand without limitation."). But the government did not get a warrant

1

in this case. Instead, they warrantlessly queried the NMEC database about Salman in violation of the Fourth Amendment. Salman therefore asks this Court to suppress all evidence obtained or derived from the warrantless NMEC queries about her, including all contents of a cell phone.

B.      Background

Much like *Hasbajrami*, this case "concerns the Fourth Amendment implications of the government's increasing technological capacity for electronic surveillance in foreign intelligence and terrorism investigations, and the balance our constitutional system requires between national security and individual privacy." 945 F.3d 641, 645 (2019). The distinction is the databases at issue, but there is ultimately no constitutional difference between them and the same Fourth Amendment analysis applies.

*Hasbajrami* involved searching data collected for counterterrorism purposes pursuant to Section 702 of the FISA Amendments Act. ("Section 702"), Pub. L. No. 110-261, 122 Stat. 2436 (2008), codified at 50 U.S.C. § 1881a. This case involves searching data collected for counterterrorism purposes, presumably pursuant to Executive Order 12333.[1] Exec. Order No. 12333, 3 C.F.R. 200 (1981).

The Section 702 database contained "information the government collected about Hasbajrami incidental to its surveillance of other individuals without ties to the United States and located abroad." *Hasbajrami*, 945 F.3d at 646. Likewise here, the NMEC database contains

---

[1] The government has not indicated the authority under which it collected and searched the data at issue in this case. But because the data collection here occurred outside the United States, it is likely that the government was operating under EO 12333. *See generally*, Elizabeth Goitein, *Overseas Surveillance in an Interconnected World*, Brennan Center for Justice (Mar. 16, 2016), *available at* https://www.brennancenter.org/media/217/download. Salman has specifically requested any relevant DOJ directives or guidelines concerning DOJ's access to or use of NMEC data about United States citizens, including any applicable minimization procedures or use restrictions, as well as any legal opinions or memoranda regarding those directives or guidelines.

information that the government collected about Salman incidental to its seizure of data from non-U.S. persons abroad. It is a repository for copies of entire cell phones, hard drives, and digitized physical documents. Transcript of Record, *United States v. Musaibli*, 18-CR-20495 (E.D. Mich. Jun. 28, 2021), ECF No. 166 at 50 ("Musaibli Tr.").

In *Hasbajrami*, the government queried the 702 database for information about Hasbajrami, a lawful permanent resident, for purposes of domestic criminal prosecution. Here, the government queried the NMEC database for information about Salman, a U.S. citizen, for purposes of domestic criminal prosecution.

Unlike *Hasbajrami*, however, the exact nature of the queries used to search for information about Salman are not currently known to the defense. *Compare Hasbajrami* 2025 WL 447498, at *7-8 (providing specific, classified details of the queries) *with* ECF No. 1 at 6 (stating that the FBI "requested information from NMEC on *a number of topics*, including *but not limited to* whether any [data] had been obtained relating to HALIMA SALMAN.") (emphasis added). Salman has specifically requested this information in discovery.

The government has thus far provided only limited information to Salman about its use of NMEC. A chain-of-custody record provided by the government in discovery indicates that a cell phone was recovered in the Middle Euphrates River Valley in Syria on February 23, 2019 by the United States-backed Syrian Democratic Forces. The phone was transferred to the United States-led Coalition Forces on March 28, 2019, for evaluation as evidence and exploitation. On June 23 or 26, 2019,[2] the phone or its contents were transferred to NMEC. *See* ECF No. 1 at 6. Other

---

[2] Discovery provided by the government states that the chain of custody for the cell phone transferred on either June 23 (the recorded date) or June 26 (the digitally signed date), 2019 from the "CEM Coordinator" to "Techex" for NMEC Exploitation. Other discovery provided by the government indicates that a United States agent performed a physical extraction of the cell phone on June 15, 2019, which is not reflected in the chain of custody record.

discovery provided by the government indicates that a federal agent analyzed the physical extraction of the cell phone's contents on August 18, 2022. Presumptively then, the first NMEC query was sometime between June 15, 2019, and August 18, 2022, which has not been disclosed to the defense. That review identified the cell phone recovered on February 23, 2019. NMEC produced to the FBI "Individual-3 Device NMEC Records," which have not been disclosed to the defense. The defense is entirely unaware of who searched NMEC, when, how many times, and for what query. What we do know is that every such search proceeded without a warrant.

C.    Argument

i.    Querying the NMEC Database for Salman Was a Fourth Amendment Search

In *Hasbajrami*, the Second Circuit held that querying the Section 702 database for information about a U.S. person was "a separate Fourth Amendment event" than the initial seizure of evidence. 945 F.3d at 646. The court explained that "querying that stored data [has] important Fourth Amendment implications, and those implications counsel in favor of considering querying a separate Fourth Amendment event that, in itself, must be reasonable." *Id*. The same rule should apply to querying the NMEC database for information about U.S. persons such as Salman.

a.    Salman Had a Reasonable Expectation of Privacy in Her Communications and Cell Phone Data

Salman had a reasonable expectation of privacy in her electronic communications and cell phone data, both of which the government appears to have collected and stored in its NMEC database—and subsequently searched without a warrant.[3] The government's warrantless, post-

---

[3] Ms. Salman has Fourth Amendment "standing" for the same reasons she has a "reasonable expectation of privacy" in her data. The historic standing requirement is "more properly subsumed under substantive Fourth Amendment doctrine." *Rakas v. Illinois*, 439 U.S. 128, 139

4

collection, secondary search of that data was an unreasonable intrusion on Salman's privacy interests and violated the Fourth Amendment.

Salman had an expectation of privacy in the data queried for two reasons. First, the NMEC database contained her private communications. This is self-evident from the three 'selfies' of Salman prominently offered in the Complaint. ECF No. 1 at 9-10. Those photographs were electronic communications, either sent to or taken by the device, and they appear to have been collected "incidentally" from the extraction of a cell phone belonging to someone other than Salman. *See id.* at 8-10 (identifying "Individual #3"—not Salman—as the owner of the phone from which the selfies were collected); *Hasbajrami*, 945 F.3d at 648-49. Second, upon information and belief, the Syrian Defense Forces, working together with the U.S. military, seized a cell phone from Salman in March 2019. As a result, there is a reasonable probability that Salman's cell phone contents were in the NMEC database queried.

To wit, in a similar case, the U.S. government maintains it had "stringent" policies and procedures for how data was acquired, processed, and uploaded to the NMEC database. Musaibli Tr. at 52-53. These policies included making "bit-for-bit" or "forensic images" of "everything" on seized cell phones, which was then "pushed" to NMEC. *Id.* at 54. After that, the data was "indexed and catalogued" and "stored in the repository" to be searched in the future. *Id.* at 54-55. Indeed, the government likens the NMEC database to a vast "library"—a compilation of cell phone extractions and other digital media, all organized with the uncanny precision of the "Dewey decimal system." *Id.* at 53, 55. Consequently, it is reasonable to conclude that the data on the cell phone taken from Salman was forensically extracted and uploaded to the NMEC

---

(1978) ("Rigorous application of the principle that the rights secured by this Amendment are personal, in place of a notion of 'standing,' will produce no additional situations in which evidence must be excluded. The inquiry under either approach is the same.").

database, along with the communications made by her that were located on what the government says is her husband's phone.

In summary, Salman maintained an expectation of privacy in both her cell phone data and her electronic communications, however lawfully the government might have first obtained them abroad.[4] Texting a selfie is no different, constitutionally speaking, from sending an e-mail. Both are electronic communications. Both have senders and recipients. And both have a content payload that is meant to be private. A communication is still a communication—whether intercepted at one end or the other, or at some point in between. The government may have lawfully collected Salman's data at some point, but she maintained a privacy interest in it against the kind of domestic querying in this case.

          b.      Querying the NMEC Database Was a Search Under *Hasbajrami*

The Second Circuit identified three considerations that counsel in "favor of finding that querying constitutes a 'separate Fourth Amendment event that, in itself, must be reasonable.'" *Hasbajrami*, 945 F.3d at 670. All of them are applicable here.

First, the Second Circuit emphasized that initial, "lawful collection alone does not always justify a future search." *Hasbajrami*, 2025 WL 447498, at *5; *and see Hasbajrami*, 945 F.3d at 670. Instead, the court recognized the "need for additional probable cause or reasonableness assessments to support a search of information or objects that the government has lawfully

---

[4] It is of no consequence that the data was collected outside the U.S. or possibly under a different legal authority, for two reasons: First, Ms. Salman is not challenging the reasonableness of the initial collection abroad, consistent with the Second Circuit's decisions in *Hasbajrami*, 945 F.3d at 646, and *In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 157, 172-73 (2008). Second, as in both cases, the government knew they were likely to collect information about Americans. Indeed, the FBI has been involved with NMEC since its inception in 2003 for the explicit purpose of assisting law enforcement and counterterrorism prosecutions in the United States. *See* Musaibli Tr. at 17-18 (describing how the FBI actively looks for information about potential Americans and is "trying to always look for that U.S. connection").

6

collected." *Id.* at 670. Although emails were at issue in *Hasbajrami*, the court reached its conclusion by analogizing to a cell phone search–*i.e.*, exactly the type of data at issue here. *Id.* ("In *Riley v. California*, the Supreme Court held that a warrant was necessary to search a cell phone, even when that cell phone was lawfully seized pursuant to a search incident to a lawful arrest.") (citing 573 U.S. 373, 401 (2014)). Cell phone contents are the quintessential example of digital "papers and effects," U.S. Const. amend. IV, so much so that the Second Circuit used it as an analogy. Thus, the same privacy concerns that animated the court in *Hasbajrami* also support requiring a new warrant to search lawfully seized NMEC data. *Hasbajrami*, 2025 WL 447498, at *17 ("Emails, like cell phones, can provide a glimpse into nearly every aspect of someone's life.).

Indeed, *Riley v. California* is highly instructive here. *Id.* at *7. As Judge DeArcy Hall has explained:

> In *Riley*, the Supreme Court held that a warrant was necessary to search a cell phone, even where that cell phone was lawfully seized pursuant to a search incident to a lawful arrest. 573 U.S. at 381. The *Riley* court emphasized that, in contrast to other physical items seized during an arrest, cell phones contain troves of sensitive and private information. *Id*. at 395 (recognizing "an element of pervasiveness that characterizes cell phones but not physical records"). Hence, to view the contents of a cell phone seized incidental to an arrest, the Court provided a simple directive —"get a warrant." *Id*. at 403.

*Id.* at *5. Thus, like *Riley*, even if the initial data collection was lawful, the Second Circuit's command remains clear: "get a warrant" for secondary, domestic law enforcement searches. *Id.* at *7 (quoting *Riley*, 573 U.S. at 403).

Second, *Hasbajrami* considered the "sweeping" technological capacity and broad scope of the Section 702 database, which totaled 250 million emails annually. *Id.* at 671. The volume was so large that government analysts were not reviewing all those emails, but instead were storing them in a database—and making them available to domestic law enforcement upon

7

request. *Id*. And it is because of this immense capacity for recall that a government search based on the "speculative possibility" that evidence might be found there "begins to look more like a dragnet, and a query more like a general warrant."[5] *Id.*

Indeed, as in *Carpenter v. United States*, there is something "qualitatively different" about searching a vast trove of historical data that is unlike searching an ordinary physical item. 585 U.S. 296, 309 (2018). It gives the government a kind of time-machine capability, *id.* at 312, and is so unlike traditional Fourth Amendment searches of physical items that comparing the two "is like saying a ride on horseback is materially indistinguishable from a flight to the moon." *Riley*, 573 U.S. at 393 ("Both are ways of getting from point A to point B, but little else justifies lumping them together.").  It is therefore "more like a general warrant, and less like an individual officer going to [check] the evidence locker." *Hasbajrami*, 945 F.3d at 671.

The NMEC database raises similar concerns. According to the FBI, as of 2021, it contains "anywhere from 14 to 20 petabytes of information," which is equivalent to "500 billion pieces of paper." Musaibli Tr. at 51. That is "somewhere between 240 to 400 million four-drawers cabinets full of paper." *Id.* And that is approximately 66 times larger than the amount of emails in the 702 database.[6] Thus, the querying here is likewise a far cry from "an individual

---

[5] As the government plainly did not search pursuant to any warrant, the good faith exception does not apply. There is no such thing as relying on a general warrant in good faith. *See Groh v. Ramirez*, 540 U.S. 551, 558 (2004). To hold otherwise would invite the kind of "systematic error" and "reckless disregard of constitutional requirements" that the Supreme Court has cautioned against. *Herring v. United States*, 555 U.S. 135, 144 (2009); *see also United States v. Krueger*, 809 F.3d 1109, 1123 (10th Cir. 2015) (Gorsuch, J., concurring) (finding that when a warrant is void, "potential questions of 'harmlessness'" do not matter); *United States v. Winn*, 79 F. Supp. 3d 904, 926 (S.D. Ill. 2015) ("Because the warrant is a general warrant, it has no valid portions.").

[6] Assuming an email is 75 kilobytes, 250 million emails would be 18.75 terabytes of data. And if the NSA collected 18.75 terabytes every year from 2008 to 2024, the database would be 300 terabytes. Also assuming the NMEC database now contains at least 20 petabytes of data, the

officer going to the evidence locker to check a previously acquired piece of evidence against some newfound insight." *Id.* Rather, it was akin to the "unrestricted access" to a database that the Court was unwilling to sanction in *Carpenter*. 585 U.S. at 320.

Third, the Second Circuit considered that "querying makes it easier to target wide-ranging information about a given U.S. person." *Hasbajrami*, 2025 WL 447498, at *5; *and see Hasbajrami*, 945 F.3d at 672. This is especially true "when the government knows it is investigating such a person." *Hasbajrami*, 945 F.3d at 672. As the Court reasoned: "To permit that information to be accessed indiscriminately, for domestic law enforcement purposes, without any reason to believe that the individual is involved in any criminal activity and or even that any information about the person is likely to be in the database, just to see if there is anything incriminating in any conversations that happen to be there, would be at odds with the bedrock Fourth Amendment concept that law enforcement agents may not invade the privacy of individuals without some objective reason to believe that evidence of a crime will be found by a search." *Id.*

The same holds true here: the NMEC database makes it trivial to query information about a U.S. person. However, like *Hasbajrami*, more information is needed to make this determination with certainty. It is necessary to know the details: "What kinds of querying, subject to what limitations, under what procedures, are reasonable within the meaning of the Fourth Amendment, and when (if ever) such querying of one or more databases, maintained by an agency of the United States for information about a United States person, might require a warrant, are difficult and sensitive questions." *Id.* at 672-73. Salman has requested these details

---

NMEC database is approximately 66 times bigger than the 702 database (1 petabyte equals 1,000 terabytes).

from the government, and respectfully requests an opportunity to supplement this motion if they are provided. In their absence, however, there appears to be little if any daylight between *Hasbajrami* and the facts here.

                  ii.      <u>A Warrant Is Required to Query the NMEC Database for Information About a U.S. Person</u>

Missing details about the government's queries of the 702 database, the Second Circuit remanded *Hasbajrami* to the district court for further fact-finding and its assessment of "how if at all the results of [the 702] querying affected the subsequent conduct of the investigation." *Id.* at 661. On remand, the district court apparently received these details from the government, considered them, and determined that Fourth Amendment reasonableness demands a warrant for such queries. *Hasbajrami*, 2025 WL 447498, at \*5. The court's analysis properly began and ended "with the basic rule that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, *are per se* unreasonable under the Fourth Amendment.'" *Id.* at \*9. And even though the court acknowledged "a few specifically established and well-delineated exceptions to this rule," including the so-called "foreign intelligence exception," it held that none applied. *Id.* at \*13, 15. For the same reasons here, reasonableness requires a warrant to query the NMEC database for information about a U.S. person.

Like *Hasbajrami*, the "foreign intelligence exception" does not apply in this case. Although neither this Court nor Salman know the precise parameters of the NMEC database or the queries about her, the government cannot "establish that its aims would have been hindered by adhering to the warrant requirement." *Id.* at \*13. That is because it is "simply inconceivable that the government's aims would have been frustrated by securing a warrant at any time over the course of many months." Indeed, the FBI learned of Salman—an American detained in Syria— when they questioned her sister on September 18, 2019 (and again on May 18, 2021), and knew

10

of her when they questioned her grandmother (within the United States) on October 19, 2020, when they questioned her brother on January 17 and 25, 2021, and when they questioned her other brother on July 1 and 14, 2022, any or all of which may have been prior to the unknown first NMEC queries in this case. Even if this case went beyond "garden variety" law enforcement, the government has not and cannot show that getting a warrant would have hindered its objectives. *See id.* at *14.

D.      Conclusion

For the foregoing reasons, Salman respectfully requests that this Court grant her motion in its entirety, and (i) suppress all evidence obtained or derived from the warrantless NMEC queries about her; or (ii) in the alternative, hold an evidentiary hearing outside the presence of the jury before trial to resolve any factual or legal issues raised by this motion; and (iii) grant such other and further relief that the Court deems just and proper.

DATED:      BROOKLYN, N.Y.
            April 16, 2025

/s/

MIA EISNER-GRYNBERG
SAMUEL JACOBSON
Federal Defenders of New York, Inc.
1 Pierrepont Plaza, 16th Floor
Brooklyn, N.Y. 11201
(718) 330-1257

MICHAEL PRICE
Fourth Amendment Center
National Association of Criminal Defense Lawyers
1660 L Street, NW, 12th Floor
Washington, DC 20036
(202) 465-7615

*Attorneys for Halima Salman*

11