UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------X

UNITED STATES OF AMERICA         :

                  :

    -against-             :           NOTICE OF MOTION TO

                  :           SUPPRESS STATEMENTS

HALIMA SALMAN,        :

                  :           24-CR-206 (NCM)

          Defendant.     :

------------------------------------------------------X

PLEASE TAKE NOTICE, upon the annexed memorandum of law, that the defendant

HALIMA SALMAN, by her attorneys MIA EISNER-GRYNBERG and SAMUEL JACOBSON

of the Federal Defenders of New York, Inc., will move the Court, before the Honorable Natasha

C. Merle, United States District Judge for the Eastern District of New York, for an Order:

1. Suppressing all evidence of statements involuntarily made by Halima Salman, in response to interrogation in violation of the Fifth Amendment of the United States Constitution, pursuant to Fed. R. Crim. P. 12(b)(3)(C) and 18 U.S.C. § 3501(a); or

2. In the alternative, directing that a hearing be held outside of the presence of the jury before trial as to the admissibility of such evidence; and

3. Granting such other and further relief as the Court may deem just and proper.

DATED:     BROOKLYN, N.Y.
           April 16, 2025

                               /s/
                             MIA EISNER-GRYNBERG
                             SAMUEL JACOBSON
                             Attorneys for Halima Salman
                             Federal Defenders of New York, Inc.
                             1 Pierrepont Plaza, 16th Floor
                             Brooklyn, N.Y. 11201
                             (718) 330-1257

TO:   JOHN J. DURHAM
      United States Attorney
      Eastern District of New York
      271 Cadman Plaza East
      Brooklyn, N.Y. 11201

By:     Assistant U.S. Attorney Amanda Shami
        Assistant U.S. Attorney Andrew Reich

CC:   Clerk of the Court (NCM) (by ECF)
      Halima Salman

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA                    :
                                            :
      -against-                             :
                                            :         24-CR-206 (NCM)
HALIMA SALMAN,                              :
                                            :
                   Defendant.               :
-------------------------------------------------------X



## MEMORANDUM IN SUPPORT OF
## MOTION TO SUPPRESS STATEMENTS



                                    MIA EISNER-GRYNBERG
                                    SAMUEL JACOBSON
                                    Attorneys for Halima Salman
                                    Federal Defenders of New York, Inc.
                                    1 Pierrepont Plaza, 16th Floor
                                    Brooklyn, New York 11201
                                    (718) 330-1257


TO:    JOHN J. DURHAM
       United States Attorney
       Eastern District of New York
       271 Cadman Plaza East
       Brooklyn, New York 11201
       By:    Assistant U.S. Attorney Amanda Shami
              Assistant U.S. Attorney Andrew Reich

This Memorandum of Law is submitted in support of Halima Salman's motion to suppress evidence of statements involuntarily made by her, in response to interrogation, in violation of the Fifth Amendment of the United States Constitution.

A.      Introduction

Halima Salman, a United States citizen, was captured by the United States-backed Syrian Democratic Forces ("SDF") in March 2019. For more than five years, despite the United States' actual knowledge of her whereabouts, she remained detained in a violent and inhumane camp, or open-air prison, where she was not permitted to leave. After years of abandoning Salman to this indefinite detention, federal agents interrogated her twice: first, on November 11, 2023, in the presence of SDF—the same entity that had abducted her younger brother from the camp in her presence, had threatened to take her away from her mother, and had imprisoned her in horrendous conditions; and then, on May 6, 2024, moments before she reunited with her family members, several of whom she had not seen for years, and was placed on a plane to finally be repatriated to her home country. Salman did not know then that she, alone among her family members, would be separated from them and arrested at JFK Airport. Instead, she was actively deceived by the agents to believe that her eight-years' running nightmare was finally over.

"[W]hen a confession challenged as involuntary is sought to be used against a criminal defendant at [her] trial, [s]he is entitled to a reliable and clear-cut determination that the confession was in fact voluntarily rendered." *United States v. Capers*, 627 F.3d 470, 479 (2d Cir. 2010) (quoting *Lego v. Twomey*, 404 U.S. 477, 489 (1972)).; *see also* 18 U.S.C. § 3501(a) ("the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness"). The government bears the burden of showing that each statement is voluntary by a preponderance of

1

the evidence. *See Lego, id*. The circumstances surrounding each interrogation render all statements made by Salman to federal agents involuntary. They must be suppressed.

      B.      <u>Background</u>

In March of 2019, in Bagouz, Syria, Halima Salman was captured by the SDF and imprisoned in the al-Hol detention camp, along with approximately 73,000 other people. Amnesty International, *Aftermath: Injustice, Torture and Death in Detention in North-East Syria* at 133 (Apr. 17, 2024), https://www.amnesty.org/en/documents/mde24/7752/2024/en/. Al-Hol was established in 1991 as a refugee camp for Iraqis. *Id*. "In 2018, the camp held around 9,000 people, including roughly 5,000 Iraqis and 4,000 Syrians, most of whom had fled the conflict involving IS[IS]." *Id*. In that one-year span, by the time Salman was detained there, its population had ballooned eight-fold. *Id*. Though al-Hol, along with the other detention camp in Northeast Syria, Camp Roj, are classified as "camps," they are in fact open-air prisons. In 2019, at the same time Salman was detained there, SDF "locked" the camps, meaning "those held in the camps cannot leave without the approval of the security forces. In practice, those held in the camps leave only in vary rare circumstances, such as in medical emergencies." *Id*. at 134. "No one in either camp has faced a judicial process review or has been given the opportunity to challenge their detention before an independent authority." *Id*. at 134-35. "All people held in al-Hol camp and Roj camp are therefore being held arbitrarily and indefinitely, the vast majority"— including Salman—for more than five years." *Id*.

As of April 2024, the month before the Salmans were repatriated, ninety-four percent of the people imprisoned at al-Hol and Roj were women (32%) and children (62%). *Id*. at 133. 19% were foreign nationals, like the American Salmans. *Id*. Halima, her mother, and her younger siblings, other than her oldest-younger brother, who was held in a prison, all remained detained

2

together in al-Hol from 2019 until 2022. Conditions in the camp were dismal. The camp was extremely dangerous, with violence unabated by SDF: in 2021 alone, "92 people were killed inside the camp, with 20 murders in January 2021 alone." *Id*. at 135. The SDF reported 34 additional murders at the camp in 2022 and 2023. *Id*. SDF provided "grossly inhumane conditions, with inadequate access to food, water, sanitation, and healthcare." *Id*. at 138. Families lived in tents. The Salmans report rampant theft of property from the tents by SDF officers. Humanitarian workers documented a significant amount of sexual and other gender-based violence, backed by SDF. *Id*. at 140-141. Families lived in daily "fear of their sons being taken away when they reached adolescence, beginning at around age 11 or 12, and moved to 'rehabilitation' centers,'" or juvenile jails. *Id*. at 151. In approximately 2022, this "most painful and difficult thing about living in the detention camps," *id*. at 151, happened to Halima and her family: her younger brother Bilal went to the open-air market one day and never returned. Instead, the family saw cars zoom past their tent, the SDF abducting Bilal without notice or warning; Halima would not see him for the next three years.

In 2023, the remaining Salmans at al-Hol finally received permission to transfer to Roj, to be reunited with the eldest child, who was imprisoned there. The transfer was not direct. Instead, the SDF incarcerated the Salmans—women and children—in two prisons, for a period of three months. This was despite the family declaring themselves to be Americans—both in interrogations with American officials, and publicly—for years. While in the SDF prisons, Halima became ill, developing an untreated fever. The prison ran out of water. They were held in cells with mentally ill people. And they were constantly threatened by SDF, including by taking their mother out for interrogation, and telling the young Salman children, including an eight-year-old, that she was never coming back. Their experience was commonplace: many foreign

3

national women describe being interrogated by SDF at the transfer prison, and "being forced to sign documents they had not been able to read, and being told that if they refused, they would remain in the prison indefinitely." *Aftermath* at 145. Finally, the family was transferred to Camp Roj and Halima was reunited with her older sister. The family, minus the two eldest sons, remained at Roj until their repatriation. Conditions, though marginally improved from al-Hol, remained abysmal. *Id.* at 138.

Human rights organizations have raised particular alarms about the indefinite and arbitrary detention in these open-air prisons of trafficking victims, of which Salman is one. *Id*. at 154. "The internationally accepted definition of trafficking is set out in the UN Protocol to Prevent, Suppress, and Punish Trafficking in Persons Especially Women and Children (also known as the Palermo Protocol)." *Id*. at 158. Children are classified as trafficked if two elements are met: "(1) an action, such as the recruitment, transportation, transfer, harboring or receipt of a person," and "(2) for the purpose of exploitation." *Id*. (citing Palermo Protocol, Article 3(a)); *see also* CEDAW Committee, General Recommendation 38, which affirms that definition in the Palermo Protocol as including the internationally recognized legal definition in trafficking in persons, para. 11). Salman meets both criteria: she was transported to Syria and transferred to ISIS control by her father, for the purpose of joining its caliphate, when she was too young to be able to consent. Despite the United States' express knowledge that Salman was trafficked to Syria by her father as early as 2019, when the FBI first interviewed her sister, the US made no efforts to repatriate her or her siblings for more than five years.

In this context, on November 11, 2023, at Camp Roj, two FBI agents—together with SDF agents—interrogated Salman. They obtained an advice of rights waiver form from her and interrogated her for 85 minutes about her arrival in Syria, her marriage, her kunyas (nicknames),

4

her role and involvement in ISIS, which she denied, and whether she had attended military training, which she also denied. Following that interrogation, at which the agents confirmed that they knew her to be American, Salman did not hear from agents again until May 6, 2024. In the middle of the night, she and her family were removed from Roj and taken to a repatriation staging area. She was told that they would be imminently reunited with her brothers, and that they were all going home together that morning. After being told this, and prior to boarding the plane, FBI agents interrogated her again, obtaining the same waiver, from 7:00am until 7:50am.

C.     Argument

Under the circumstances presented here, no statement produced by the interrogation of Salman was voluntary, and her purported waiver of her effectively *Miranda* rights was not voluntarily made. Statements procured by coercion are excluded under the Due Process Clause because they are *per se* involuntary and untrustworthy. Such admissions run contrary to "fundamental principles of liberty and justice which lie at the base of all our civil and political institutions." *Brown v. Mississippi,* 297 U.S. 278, 286 (1936). "A coerced confession is offensive to basic standards of justice ... because declarations procured by torture are not premises from which a civilized forum will infer guilt." *Lyons v. Oklahoma,* 322 U.S. 596, 605 (1944). When someone subjected to a coercive interrogation then provides inculpatory statements, courts should exclude those inculpatory statements because of their "probable unreliability," *Jackson v. Denno,* 378 U.S. 368, 386 (1964).

The "ultimate test" for determining whether a statement is coerced is "the test of voluntariness." *Culombe v. Connecticut,* 367 U.S. 568, 602 (1961). This requires the Court to ask whether "the confession is the product of an essentially free and unconstrained choice by its maker," or whether "his will has been overborne and his capacity for self-determination [has

5

been] critically impaired ....” *Id.* The answer to this question is determined by considering “the totality of all of the surrounding circumstances—both the characteristics of the accused and the details of the interrogation.” *Schneckloth v. Bustamonte,* 412 U.S. 218, 226 (1973).

Here, the totality of the circumstances shows that Salman's statements at both interrogations, and her waivers, were involuntary. First, the November 11, 2023 interrogation, at Roj, was conducted by the FBI in tandem with, and in the presence of, SDF agents. As for the FBI, Salman knew this to be an American law enforcement entity that had been made aware of her presence, as an American, in this horrific foreign detention for many years, and had done nothing to aid her. The SDF, conversely, had actively brutalized her: they captured her in 2019 in the first instance, imprisoned her at al-Hol with no process or ability to leave from 2019-2023, threatened her, stole her family's goods, kidnapped her younger brother in front of her without notice or process, and arbitrarily placed her in grotesque prisons for three months before their transfer to this place, Camp Roj, where she was now being questioned in front of them. In that context, answering the FBI's questions in the presence of SDF can hardly be said to be “the product of an essentially free and unconstrained choice by its maker.” *Culombe*, 367 at 602. Her “capacity for self-determination” was “critically impaired.” *Id*.

So, too, was the May 6, 2024 interrogation on FBI agents, effectively at the base of her repatriation flight, involuntarily. Agents actively misled Salman, telling her expressly that she was finally being reunited with her family, and going home. While true, the agents left out the significant piece that while she was indeed going back to America with her family—after eight years, more than five of which in American-supported detention—she was not in fact going “home.” The agents knew that while her other nine family members would be free to leave once they hit JFK Airport, Salman alone would be taken into custody. Having deceived her as to what

6

was about to happen, the government took an additional stab at gaining a confession from Salman. With the plane literally in reach, Salman's agreement to waive her right to answer questions, and the content of her statements, were not freely given. *See United States v. Ruggles*, 70 F.3d 262, 265 (2d Cir. 1995) (material misrepresentations based on unfulfillable or other improper promises might perhaps overbear a defendant's will). The only reasonable inference from being questioned immediately before travel is that if she did not speak, and did not give satisfactory answers, her indefinite detention and separation from her brothers would resume. Her responses are constitutionally untrustworthy, because her will was overborne both by the false prospect of going home after so many years, and the implied threat of being deprived of the same.

D.    Conclusion

For the foregoing reasons, Salman respectfully requests that this Court grant her motion in its entirety, and (i) suppress all evidence of statements involuntarily made by her, in response to interrogation; or (ii) in the alternative, hold an evidentiary hearing outside the presence of the jury before trial to resolve any factual or legal issues raised by this motion; and (iii) grant such other and further relief that the Court deems just and proper.

DATED:    BROOKLYN, N.Y.
          April 16, 2025

/s/
_____
MIA EISNER-GRYNBERG
SAMUEL JACOBSON
Attorneys for Halima Salman
Federal Defenders of New York, Inc.
1 Pierrepont Plaza, 16th Floor
Brooklyn, N.Y. 11201
(718) 330-1257

7